NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICHARD PELLEGRINI,

Defendant.

Crim. Action No. 08-210 (GEB)

**MEMORANDUM OPINION**

RECEIVED
NOV 26 2008
AT 8:30 M
WILLIAM T. WALSH
CLERK

**BROWN, Chief Judge**

This matter before the Court is in regard to the sentencing of defendant Richard Pellegrini ("Defendant"). Defendant pleaded guilty on May 20, 2008, to one count of structuring and fifty-three counts of causing or attempting to cause banks to fail to file Currency Transaction Reports ("CTRs"). The issue before the Court is what sentence is "reasonable" to impose upon Defendant, in light of the federal Sentencing Guidelines and the statutory factors outlined in 18 U.S.C. § 3553(a) and in consideration of the unique issues in this case. The Court, having considered the United States' sentencing memorandum and having considered Defendant's many submitted letters from friends, family, and acquaintances on Defendants' behalf regarding his character and actions belying his criminal conduct, and finally, having considered the parties' arguments at a hearing on October 17, 2008, and for the following reasons set forth in this memorandum opinion, the Court will exercise its discretion in sentencing Defendant in variation from the Sentencing Guidelines due to the unique circumstances involved in this case, finding that a non-Guidelines, non-custodial sentence

under these circumstances is reasonable and "sufficient but not greater than necessary to achieve the statutory purposes of sentencing" as required by the Sentencing Guidelines and as set forth in the enumerated factors in 18 U.S.C. § 3553(a).

## I. BACKGROUND

On March 18, 2008, the Grand Jury in and for the District of New Jersey, sitting in Newark, indicted Defendant with: (1) structuring financial transactions, in violation of 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2 (count one); and (2) causing and attempting to cause banks to fail to file CTRs, in violation of 31 U.S.C. § 5324(a)(1) and 18 U.S.C. § 2 (counts two through fifty-four). The Court scheduled Defendant's trial to commence on May 20, 2008, but at the last moment, Defendant, on the same date, changed his plea from not guilty to guilty as to all counts listed in the Indictment. (Docket Entry No. 20.)

## I. STANDARD OF REVIEW

The Supreme Court, in its decision in United States v. Booker, 543 U.S. 220, 245 (2005), determined that the federal Sentencing Guidelines are "advisory" rather than "mandatory." The Booker Court held that as a result, district courts should "consult [the federal Sentencing] Guidelines and take them into account when sentencing." Id. at 264. District Courts must also adhere to the requirements of 18 U.S.C. § 3553, which state that a court should "impose a sentence sufficient, but not greater than necessary, to comply with [the statutory purposes for sentencing]." 18 U.S.C. § 3553(a). The ultimate issue before this Court is to impose a reasonable sentence, taking all of the relevant facts and law into consideration, by first calculating the appropriate range as directed by the

Sentencing Guidelines, and then second, by considering the § 3553 factors to ensure that a reasonable sentence that upholds the statutory purposes for sentencing is imposed.

## III. DISCUSSION

### A. Calculation of Advisory Range under the Sentencing Guidelines

The Court calculates Defendant's offense level according to the May 1, 2008 edition of the Guidelines Manual, and all fifty-four counts to which Defendant pleaded guilty are grouped under U.S.S.G. § 3D1.2(d). For a violation of 31 U.S.C. § 5324(a)(3) and (d)(1) and 31 U.S.C. § 5324(a)(1) and (d)(1), Section 2S1.3(b) of the United States Sentencing Commission Guidelines calls for a base offense level of six plus the number of levels from the table at § 2B1.1 corresponding to the value of the funds. "Value of the funds" according to the Guidelines is defined as "the amount of the funds involved in the structuring or reporting conduct. The relevant statutes require monetary reporting without regard to whether the funds were lawfully or unlawfully obtained." Application Note 1, U.S.S.G. § 2S1.3. Here, the alleged value of the funds to which Defendant pleaded guilty was approximately $3 million. Accordingly, eighteen levels are added to the base offense level because the amount was more than $2.5 million but less than $7 million. See U.S.S.G. § 2B1.1(b)(1)(J).[1] Further, because Defendant knew that the funds were the proceeds of unlawful

---

[1] The Court notes that Defendant paid in restitution to Pamrapo Bank the amount of $56,000, which the bank expressed was its actual amount of loss due to Defendant's actions. Defendant paid this amount prior to this Court's present consideration of sentencing. Had this amount been that to which Defendant pleaded guilty, the appropriate addition to the base level under the Guidelines would have been an addition of six levels rather than the eighteen levels the Sentencing Guidelines requires the Court to add, the difference being twelve levels under the Guidelines.

activity, "check kiting" or bank fraud, which would constitute a violation of 18 U.S.C. § 1344, the base offense level will be increased by two levels pursuant to U.S.S.G. § 2S1.3(b)(1)(A).[2] In addition, Defendant was convicted of an offense under sub-chapter 53 of Title 31 of the United States Code, and committed the offense as part of a pattern of unlawful activity involving more than $100,000 in a twelve-month period. Therefore, the base level will be increased by two levels, pursuant to U.S.S.G. § 2S1.3(b)(2). Thus far, the Court calculates the subtotal of Defendant's offense level as twenty-eight. However, because Defendant has pleaded guilty and has accepted responsibility for his actions, pursuant to U.S.S.G. § 3E1.1(a), the offense level should be reduced by two levels, bringing the Court's calculation of the total offense level to twenty-six.

Defendant's total criminal history points is zero, which according to the Sentencing Table at U.S.S.G. Chapter 5, Part A means that such establishes a criminal history category of I, to be used in computing the range set forth in the Table. Further, the statutory maximum term of imprisonment for all counts is five years on each count, pursuant to 31 U.S.C. § 5324(a)(3) and (d)(1) and § 5324(a)(1) and (d)(1).

Both the United States and Defendant agree with the Court's offense level calculation under the Sentencing Guidelines, according to their representations during the sentencing hearing on October 17, 2008. An offense level of twenty-six instructs that the term of imprisonment under the Guidelines is sixty-three to seventy-eight months.[3]

---

[2] The Court notes that Defendant has not been charged with "check kiting" or bank fraud.

[3] Had Defendant pleaded guilty to the amount of actual loss that the bank asserted it endured as the result of these unlawful acts, specifically $56,000, and had Defendant been sentenced accordingly, the Court would have otherwise computed Defendant's offense level under the Guidelines to be fourteen, which instructs that the term of imprisonment under the

**B. Consideration of the enumerated factors of 18 U.S.C. § 3553(a)**

Booker, as the Court has previously noted, "requires a sentencing court to consider Guidelines ranges . . . but it permits the court to tailor the sentence in light of other statutory concerns as well." 543 U.S. at 245-46 (citing 18 U.S.C. § 3553(a)). In turn, therefore, the Court will consider each of § 3553(a)'s enumerated factors to determine whether a sentence outside of the Guidelines' range is appropriate. The statute requires consideration of the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> >
> > > (I) issued by the Sentencing Commission . . . ;
> >
> > . . . .
>
> (5) any pertinent policy statement –

---

Guidelines is fifteen to twenty one months. Although this difference is substantial, the Court is not at liberty to reduce the amount of the funds from the $3 million figure. See, e.g., United States v. Abdi, 342 F.3d 313, 319 (4th Cir. 2003), cert. denied, 540 U.S. 1167 (2004).

(A) issued by the Sentencing Commission . . .;

(B) that . . . is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, the Court concludes that the circumstances of this case are extremely unique, and although the Court acknowledges the seriousness of the offenses to which Defendant pleaded guilty, the Court determines that the recommended range for the term of imprisonment as is expressed in the Guidelines, in consideration of the § 3553 factors, is not appropriate and that a sentence with no jail time will be "sufficient, but not greater than necessary, to comply with [the statutory purposes for sentencing]" in the case of this particular defendant. 18 U.S.C. § 3553(a). The Court concludes that a period of five years of probation with the special condition of eight months of home confinement should be imposed on each of counts one to fifty-four; that each should run concurrently with the others; that all probation conditions should apply; that Defendant should refrain from all gambling activities and should receive treatment for gambling; that a fine of $15,000.00 should be imposed and the interest waived, to be made in monthly payments of $200.00 unless otherwise ordered by the Court; that Defendant should not associate with any other known felons; that a special assessment of $5400.00 should be imposed; and that any other conditions referenced at the November 25, 2008 hearing should also be followed. Such a sentence is sufficient given the Court's assessment that Defendant presents unique circumstances warranting this deviation from the range set forth in the Sentencing Guidelines. The Court reaches this conclusion after making the following

observations, in accord with the statutory directives of Section 3553(a) of Title 18 of the United States Code.

The Court first recounts the nature and circumstances of the offense and the history and characteristics of the defendant. Considered in the context of this Court's experience in sentencing, consideration of this § 3553 factor presents an extremely unique situation. Defendant was born on February 26, 1959, and is a resident of Bayonne, New Jersey. Defendant currently is married to his second wife who works for the City of Bayonne. Defendant rents a house in Bayonne with his wife and his fifty-eight year old, mentally disabled sister-in-law, for whom he has provided daily care since the early 1990's. In addition to her mental disability, she also suffers from diabetes, and Defendant administers her insulin injections. Defendant represented at his sentencing hearing that he takes care of his sister-in-law's daily needs, and that his incarceration will negatively affect her well-being. Defendant also has a twenty-six year old son, who suffers from his own psychological challenges, including obsessive compulsive disorder, and depends on Defendant for support. Defendant represented at his sentencing hearing that his son had recently attempted suicide and that his incarceration for any great length of time could negatively impact his son's well-being. Defendant's wife has a daughter from her first marriage, and Defendant helped to raise that daughter as his own child. Defendant's twelve-year old grandson (the son of his step-daughter) and Defendant also have a close relationship; the grandson refers to Defendant as his "best pal". Defendant asserted at his sentencing hearing that his incarceration will be both emotionally and financially overwhelming to his family members.

Defendant received his high school diploma from Bayonne High School in 1977, and has been employed, since March 2007, as an oil inspector for Amspec Services, LLC, earning

approximately $6,500 per month. He also supplements his income as a self-employed painter, earning approximately $1,300 per month from these referrals.

Defendant has a relatively blemish-free criminal history, having been arrested on other occasions between 1988 and 1991 for possession of CDS, but these arrests did not result in substantial jail time. His past encounters with the law resulted in this Court's determination that he has zero criminal history points under the Sentencing Guidelines.

According to the statement of Defendant and Defendant's attorney at the sentencing hearing, Defendant, after his trouble with drug and alcohol addiction in the late 1980's, began attending Alcoholics and Narcotics Anonymous meetings regularly and has been "clean" for the past seventeen years. His trouble with the law at that time helped Defendant to defeat his substance abuse. The Court notes that since that time, Defendant's criminal record indeed reflects no contact with law enforcement until the unlawful actions for which Defendant now faces sentencing.

Defendant's present unlawful conduct was essentially a check kiting scheme, wherein Defendant moved money between four financial institutions to support his daily gambling. There is no evidence to suggest that Defendant obtained any where near $3 million from the structuring, and rather, Pamrapo Bank, the institution where he cashed many of these checks, settled its actual damages with Defendant for the amount of only $56,000. Defendant worked at Pamrapo Bank as a painter, and because the people there knew him on a first name basis, he was able to, with ease, cash checks there without a problem. However, he did not fill out the required CTRs, in violation of the law. As an aside, the United States never charged Defendant with bank fraud, and pursuant to their plea agreement, in exchange for Defendant's plea of guilty, the United States agreed "not to initiate any further criminal charges against [Defendant] for the criminal conduct charged in the

Indictment." (Docket Entry No. 22 at 1.) The Government was not able to produce any evidence regarding the source of the money or the party currently in possession of the money, whether it be a casino, a race track, Defendant, or some other third party. For this Court's present purposes, these inquiries are irrelevant.

The Court notes that many letters in support of this Court's leniency have been submitted on behalf of Defendant. In particular, the Court notes that several of the letters come from people who participate in recovery with Defendant, those recovering from substance abuse and those recovering from gambling addictions. These letters are almost two inches thick in total and the overwhelming tone indicates to the Court that Defendant is a helpful, supportive, and productive member of his family and community. The Court is persuaded that the support that he provides to his family in particular, both economically and emotionally, is substantial, and that his family is in especially great need of that support given the health of both Defendant's sister-in-law and Defendant's son. The Court acknowledges the inevitable void that would result should Defendant be incarcerated for any great period of time.

The Court next considers the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from Defendant's possible future unlawful conduct. See 18 U.S.C. § 3553(a)(2). There is no present victim injury resulting from Defendant's actions. The Court is impressed that Defendant was able to raise the capital and pay to Pamrapo Bank its actual damages, $56,000, prior to the date of sentencing. Further, the Court is equally impressed that Defendant has independently raised the $5400 special assessment and that the money is already in a custody account with his attorney. Although the offenses for which Defendant has accepted responsibility are serious

offenses, the Court's ultimate consideration, in addition to deterrence and punishment, is what sentence is reasonable; what is a sufficient punishment that is not greater than necessary to achieve the statutory purposes of sentencing. Sentencing Defendant within the range specified in the Guidelines given the circumstances of the offense and the characteristics of Defendant is not necessary. In fact, any term of imprisonment would be greater than necessary to achieve the statutory purposes of sentencing. This case is a unique one in this Court's twenty-two years on the bench. I am convinced that the imprisonment of Defendant would be unnecessary and unjust.

However, punishment of is indeed warranted and required given the nature of the offenses. The Court has carefully considered the kind of sentences available and determined the appropriate sentence that should be imposed. Such restrictions are sufficient, but not greater than necessary, to punish Defendant for his behavior. Further, due to the unique circumstances presented, Defendant will be able to continue to support his family emotionally and financially. As noted above, he has already paid full restitution, and the special assessment was brought to court on November 25, 2008. He should also continue to participate in counseling for his addictions. This sentence reflects this Court's analysis of the § 3553 factors, the range under the Sentencing Guidelines, and the totality of the circumstances. This sentence better serves the interests of justice because Defendant has shown remorse and regret for his actions, he has fully repaid the actual loss to the financial institution on his own, he is a productive and loved member of his community, and he is greatly needed and respected by his family and friends. Defendant has also refrained from gambling since his arrest, approximately two years ago, and according to his representations and the information contained in some of the letters the Court received, has been actively attending and participating in Gamblers Anonymous. While the Court has also fully considered the seriousness of Defendant's

acts, the Court believes that Defendant has taken and will continue to take measures to ensure that he will not commit future offenses. The Court notes that Defendant will also be able to draw upon the support of his family, friends, and community to make the right decisions in the future. Finally, as the Court has noted, full restitution has already been paid to Pamrapo Bank, and the Court considers the representation of that agreement to the Court as persuasive that Defendant has taken the actions that he could to right the wrongs that he created.

## IV. CONCLUSION

For these reasons, the Court imposes period of five years of probation with the special condition of eight months of home confinement on each of counts one to fifty-four; that each should run concurrently with the others. The Court also orders that all probation conditions should apply; that Defendant should refrain from all gambling activities and should receive treatment for gambling; that a fine of $15,000.00 should be imposed and the interest waived, to be made in monthly payments of $200.00 unless otherwise ordered by the Court; that Defendant should not associate with any other known felons; that a special assessment of $5400.00 should be imposed; that Defendant will submit to DNA collection; and that any other conditions referenced at the November 25, 2008 hearing should also be followed. An appropriate Judgment Order will follow.

Dated: November 25, 2008

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.